MARY LOU MINTZ v. ATLANTIC COAST LINE RAILROAD CO.

(Filed 23 May, 1951.)

**1. Master and Servant § 15a—**

   Evidence tending to show that three inches of the tread of the steps of a steel spiral stairway. used by plaintiff employee in the performance of her work had been worn smooth and that the steps were thereby rendered extremely slick, and that the employee fell on the steps to her injury, *is held* sufficient to be submitted to the jury on the question of negligence of the employer in failing to exercise ordinary care to provide the employee a reasonably safe place in which to work.

**2. Damages § 1a—**

   The living expenses of plaintiff are not an element of compensatory damage recoverable for negligent injury unless the injury augments them by necessitating convalescent care or recuperative attention, etc., in which case the amount expended over and above plaintiff's normal living expenses may be recovered.

**3. Same—**

   Where plaintiff seeks to recover compensatory damages only and there is no evidence that her living expenses were materially increased by reason of the negligent injury sued on, testimony of plaintiff, over objection, that since her injury she had been supported by her father and her brothers and sisters, must be *held* for prejudicial error as calculated to mislead the jury on the issue of damages and augment the recovery.

**4. Same—**

   Damages recoverable for a personal injury are all damages, past, present and prospective, sustained as a consequence thereof, embracing loss of past earnings, without interest, and the present cash value of prospective earnings, considering plaintiff's age, occupation and amount of income, and also indemnity for actual nursing and medical expenses and a reasonable satisfaction for actual suffering, physical and mental, which are the immediate and necessary consequences of the injury.

**5. Master and Servant § 15a—**

   It is not the absolute duty of the employer to furnish his employee a reasonably safe place to work, but only to exercise due care to provide such place.

**6. Trial § 49½—**

   Whether a verdict should be set aside for excessiveness is ordinarily addressed to the sound discretion of the trial court.

APPEAL by defendant from *Williams, J.,* September Term, 1950, of
BRUNSWICK.

Civil action to recover damages for personal injuries alleged to. have
been caused by the negligence of the defendant.

The plaintiff was employed by the defendant as a clerk in the office of
Auditor of Freight Receipts, which is on the third floor of Coast Line
Building "A," City of Wilmington. The file room, where statement
forms are kept, is on the fourth floor of the same building, sometimes
called the attic. These two floors are connected by an iron spiral stair-
way of 22 steps. The steps are fastened to a center post and to each
other by a spindle in the handrailing on the outer edge of the steps.

The allegations of negligence are that the steel spiral stairway was
insufficiently lighted; that the treads on the stairway were smooth and
slippery; that the handrail was loose and insecure, and that both the
handrail and the stairway were in an unsafe and dangerous condition.
From this she concludes the defendant negligently omitted to provide her
a reasonably safe place to work.

The plaintiff's evidence is to the effect that on 10 April, 1947, she went
to the fourth floor to get some statement forms or blanks, and as she
descended the steps on her way back she slipped on the 10th or 11th step,
"fell four or five steps, landing on the lower end of my back." She fur-
ther testified that her lower spine was seriously injured by the fall and
that her condition is permanent.

There is also evidence on behalf of the plaintiff tending to show that
the corners of the corrugated steps were "worn slick . . . the outer edge
that you step on is worn slick as glass. . . . The tread has a triangular
shape; about three inches of it is worn smooth and slick . . . extremely
smooth, like a worn piece of steel; . . . that the steps and railing were
shaky."

The plaintiff offered two physicians who testified that her injuries
were both serious and permanent. And she was allowed to testify, over
objection, that since her injury she had been supported by her father and
her brothers and sisters.

On 13 May, 1947, the plaintiff signed a statement saying that she
stepped on a nail which caused her to fall and that someone caught her
as she was falling and prevented her head from striking the steps. On
the stand, she repudiated this statement and denounced it as spurious.

The defendant denied the allegations of negligence, pleaded contribu-
tory negligence, and offered evidence tending to show that the stairway
in question "is a standard, spiral stairway in general use"; that it was
well lighted; that the treads on the steps were neither smooth nor slick;
that "the wearing of feet on steps makes them bright, but the diamond

safety tread is still there; . . . the nosing is slick, and it is supposed to be slick"; that the slight rattling of the rods in the handrail in no way affected the safety of the steps.

Defendant's evidence also tends to show that much nearer to plaintiff's desk was an elevator in general and constant use which she could have taken to the file room. Some employees used the elevator; some the stairway; both were in general and constant use.

J. F. Surles, Jr., a witness for the defendant, testified that he was ascending the stairway at the time the plaintiff was descending it and stepped to the outer edge of the 10th or 11th step to let her pass as she had her arms full of forms; that "when she got just about even with me she slipped; it looked like her feet went out from under her and she started slipping down, maybe going to sit down on the next step, and I caught her by her blouse, or her shoulders and blouse at the same time, and she sat there on the next step which was about the tenth. Mrs. Fowler who worked upstairs in the file room came down and assisted her to the rest-room. I caught her as she slipped."

(On rebuttal, the plaintiff said: "I don't remember seeing Mr. Surles. I deny that I passed him on the steps.")

The defendant offered two physicians, one of whom testified: "I don't believe that there is a permanent disability"; the other "that she is suffering from what is known as a conversion reaction (*i.e.*) a change from psychological symptom to a physical symptom."

The usual issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff, the jury assessing her damages at $33,500.00. Motion to set the verdict aside for excessiveness; overruled; exception. The plaintiff consented to a reduction in the award, and judgment was signed in her favor for $27,500.

The defendant appeals, assigning errors.

*John D. Bellamy & Sons, Frink & Herring, Kirby E. Sullivan, and Lloyd S. Elkins, Jr., for plaintiff, appellee.*

*Poisson, Campbell & Marshall for defendant, appellant.*

STACY, C. J. The defendant has pressed its motion for judgment of nonsuit with vigor and conviction. However, taking the plaintiff's evidence as true and in its most favorable light for her, the accepted position on a motion of this kind, it appears that about three inches of the treads on the stairway were "smooth and slippery, worn extremely smooth and slick, and the outer edge of the tread was worn slick as glass," rendering the stairway unsafe and dangerous. This would seem to carry the case to the jury, even if it be conceded that the remaining evidence of "shaky

steps and railing" is too feckless to have any bearing on the issue. *Batson v. Laundry,* 205 N.C. 93, 170 S.E. 136. It is true the stairway was examined immediately after the plaintiff's fall, and her evidence is disputed, still this was a matter for the jury and not the court. Indeed, the case seems to be one of contradictions in many respects.

A new trial must be awarded, however, for error in allowing the plaintiff to testify, over objection, that since her injury she has been supported by her father and her brothers and sisters. This was incompetent on the issue of damages, calculated to mislead the jury, and it undoubtedly augmented the recovery. *Robertson v. Conklin,* 153 N.C. 1, 68 S.E. 899, 138 Am. S. R. 635, 21 Ann. Cas. 930; *Journigan v. Ice Co., ante,* 180, 63 S.E. 2d 183; *McCoy v. R. R.,* 229 N.C. 57, 47 S.E. 2d 532; *Alley v. Foundry Co.,* 159 N.C. 327, 74 S.E. 885; *Wallace v. R. R.,* 104 N.C. 442, 10 S.E. 552.

There is nothing in the case to justify a consideration of the plaintiff's pecuniary condition in assessing the damages. The action is to recover for personal injuries arising from the defendant's negligent default and not from any willful or malicious conduct on its part. Compensatory damages alone are sought, and there is no suggestion that plaintiff's living expenses were materially increased by the injury. *Robertson v. Conklin, supra; Reeves v. Winn,* 97 N.C. 246, 1 S.E. 448.

The pertinent authorities are epitomized in 17 C.J. 801 as follows: "A plaintiff is not entitled to recover for his living expenses during the period of disability occasioned by the injury, where it does not appear that they were increased by the injury. But he is entitled to compensation for an increase in such expenses occasioned by the injury."

One of the authorities there cited is *Vedder v. Delaney,* 122 Iowa 583, 98 N.W. 373, in which it is said: "Plaintiff, like every other person, is expected to pay for his own board and keeping, and that obligation is not removed by his injury through the negligence of another. It is true that the injury renders him unable for the time being to earn his board, but, if he recovers at all, he recovers compensation for his loss of time, which is the equivalent of wages; and thus, so far as this item is concerned, he is made whole. It may well happen that, by reason of his injured and dependent condition, his expense for board is materially increased, and in such case, doubtless, the enhanced cost may be recovered."

In *Graeber v. Derwin,* 43 Cal. 495, a new trial was granted for the exact error committed here, and this was the only question considered in the opinion.

The case at bar is not like *Perkins v. Coal Co.,* 189 N.C. 602, 127 S.E. 677, where the plaintiff was allowed to state that his hospital, doctor, and drugstore bills, occasioned by his injury, were unpaid because of his

inability to pay them, and that he had promised to pay them, their rea-
sonableness not being questioned. *Allen v. Traction Co.,* 144 N.C. 288,
56 S.E. 942. The plaintiff's living expenses as distinguished from those
occasioned by her injury are not within the measure of damages for her
loss. The defendant is required to pay for the loss occasioned by its
negligence, not to support the plaintiff during her disability. *Blaine v.
Lyle,* 213 N.C. 529, 196 S.E. 833. The measure of liability in such case
is stated in *Ledford v. Lumber Co.,* 183 N.C. 614, 112 S.E. 421; *Helm-
stetler v. Power Co.,* 224 N.C. 821, 32 S.E. 2d 611; *Daughtry v. Cline,*
224 N.C. 381, 30 S.E. 2d 322, 154 A.L.R. 789; *Fox v. Army Store,* 216
N.C. 468, 5 S.E. 2d 436; *Shipp v. Stage Lines,* 192 N.C. 475, 135 S.E.
339; *Fry v. R. R.,* 159 N.C. 357, 74 S.E. 971; *Johnson v. R. R.,* 163
N.C. 431, 79 S.E. 690.

It is true, as already stated, the tort-feasor may be liable for any addi-
tional expenses reasonably entailed by the injury which perforce are in
excess of the plaintiff's personal livelihood or normal support. For
example, expenses necessarily incurred for hospital treatment, conva-
lescent care, or recuperative attention. *Graeber v. Derwin,* 43 Cal. 495;
15 Am. Jur. 547. The challenged testimony in the instant case, however,
was addressed to the plaintiff's personal livelihood or normal support.
It was, therefore, incompetent and should have been excluded. *Tank-
ersley v. Lincoln Traction Co.,* 104 Neb. 24, 175 N.W. 602, 10 A.L.R.
1510; 15 Am. Jur. 549.

In cases of personal injury resulting from defendant's negligence, the
plaintiff is entitled to recover the present worth of all damages sustained
in consequence of the defendant's tort. These are understood to embrace
indemnity for actual nursing and medical expenses and for loss of time,
or loss from inability to perform ordinary labor, or capacity to earn
money. Plaintiff is to have a reasonable satisfaction for actual suffering,
physical and mental, which are the immediate and necessary consequences
of the injury. The age and occupation of the plaintiff, the nature and
extent of his business or employment, the value of his services and the
amount of his income at the time, whether from fixed wages, salary or
professional fees, are matters properly to be considered by the jury.
*Rushing v. R. R.,* 149 N.C. 158, 62 S.E. 890. The award is to be made
on the basis of a cash settlement of the plaintiff's injuries, past, present
and prospective. *Ledford v. Lumber Co., supra; Pascal v. Transit Co.,*
229 N.C. 435, 50 S.E. 2d 534; *Penny v. R. R.,* 161 N.C. 523, 77 S.E.
774; *Johnson v. R. R.,* 163 N.C. 431, 79 S.E. 690; *Fry v. R. R., supra.*
In assessing prospective damages, only the present cash value or present
worth of such damages is to be awarded as the plaintiff is to be paid in
advance for future losses. *Helmstetler v. Power Co., supra; Murphy v.
Lumber Co.,* 186 N.C. 746, 120 S.E. 342. No interest is to be allowed on

damages already sustained because amount not fixed or known prior to verdict, *i.e.,* unliquidated, and only the present cash value or present worth of future losses is to be included in the verdict. *Penny v. R. R., supra;* 15 Am. Jur. 579. See *Harper v. R. R.,* 161 N.C. 451, 77 S.E. 415, for a different rule in respect to interest when action is to recover for property damage.

As a matter of precaution and to guard against its repetition in the form presently couched, attention is directed to the following portion of the charge:

"The Court charges you, Gentlemen, that the defendant owed to the plaintiff under the circumstances in this case the duty of furnishing to the plaintiff a reasonably safe place in which to perform the duties of the work in which she was engaged at the time and to maintain the stairs in a reasonably safe condition."

It is not the absolute duty of the employer to provide a reasonably safe place for his employee to work—such would practically render him an insurer in every hazardous employment—but it is his duty to provide such place in the exercise of ordinary care. *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Owen v. Lumber Co.,* 185 N.C. 612, 117 S.E. 705; *Gaither v. Clement,* 183 N.C. 450, 111 S.E. 782; *Smith v. R. R.,* 182 N.C. 290, 109 S.E. 22. This limitation on the employer's duty is not a mere play on words, nor a distinction without a difference, since it constitutes a material fact or circumstance affecting the rights of the parties. *Murphy v. Lumber Co.,* 186 N.C. 746, 120 S.E. 342; *Tritt v. Lumber Co.,* 183 N.C. 830, 111 S.E. 872; *Murray v. R. R., supra,* and cases there cited. "It is the duty of the employer, in the exercise of ordinary care, to furnish an employee with a reasonably safe place to work." *Street v. Coal Co.,* 196 N.C. 178, 145 S.E. 11.

There are other exceptions of moment appearing on the record, which we do not reach, as they are not likely to arise on the further hearing.

Whether the verdict should be set aside for excessiveness is ordinarily addressed to the sound discretion of the trial court. *Edmunds v. Allen,* 229 N.C. 250, 49 S.E. 2d 416. See 15 Am. Jur. 649, *et seq.*

For the error as indicated, a new trial must be awarded. It is so ordered.

New trial.