STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. KENNETH W. BLACKWELDER, EXECUTOR OF THE ESTATE OF CLYDE WILLARD BLACKWELDER

No. 404PA91

(Filed 17 July 1992)

1. **Insurance § 464 (NCI4th) — underinsured motorist payment — subrogation right — injured party's dismissal of claim against tortfeasor's estate**

An injured party's dismissal with prejudice of her claim against the tortfeasor's estate for injuries received in an automobile accident did not extinguish plaintiff automobile insurer's subrogation right against the tortfeasor's estate for the underinsured motorist payment it made to the injured party, its insured, where the tortfeasor's liability insurer stated that it would tender its $50,000 liability limit to plaintiff's insured at the appropriate time; plaintiff advanced $50,000 to its insured to protect its subrogation interest; plaintiff then paid its $50,000 underinsured motorist limit to its insured and indicated to the tortfeasor's estate and liability insurer that it would not release its subrogation right against the estate; plaintiff's insured released plaintiff from all claims arising from the accident in consideration for the $100,000 it had paid to her, and the release acknowledged plaintiff's subrogation right; the tortfeasor's liability insurer paid its $50,000 liability limit to plaintiff's insured, who released all claims against the tortfeasor's liability insurer and dismissed with prejudice her action against the tortfeasor's estate; this $50,000 was deposited

STATE FARM MUTUAL AUTO. INS. CO. v. BLACKWELDER

[332 N.C. 135 (1992)]

into plaintiff's account; and plaintiff filed this action to recover its underinsured motorist payment from the tortfeasor's estate. Plaintiff preserved its subrogation right against the tortfeasor's estate in the manner set forth in N.C.G.S. § 20-279.21(b)(4), and this subrogation right had already passed to plaintiff by operation of law at the time the injured party dismissed her claim and could be pursued by plaintiff in its own name at its election.

**Am Jur 2d, Automobile Insurance §§ 439, 441.**

**Rights and remedies of insurer paying loss as against insured who has released or settled with third person responsible for loss. 51 ALR2d 697.**

2. **Executors and Administrators § 103 (NCI4th) — subrogation claim against estate — statute of limitations**

Plaintiff underinsured motorist insurer's subrogation claim against the tortfeasor's estate was not barred by N.C.G.S. § 28A-19-3(b) since the tortfeasor lived for twenty-four hours after the accident from which the claim arose, and the claim thus arose before rather than at or after the tortfeasor's death.

**Am Jur 2d, Executors and Administrators § 584.**

ON petition for discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 103 N.C. App. 656, 406 S.E.2d 301 (1991), reversing the trial court's grant of defendant's motion for summary judgment entered by *Davis, J.*, in the Superior Court, CABARRUS County, on 21 August 1990 and remanding for trial. Heard in the Supreme Court 10 March 1992.

On 21 March 1988 Maureen Sargeant was seriously injured when her car, in which she was a passenger, was struck head-on by a vehicle driven by Clyde Willard Blackwelder. Mr. Blackwelder died the next day as a result of the accident. The plaintiff, State Farm Mutual Insurance Company (hereinafter "State Farm"), insured the Sargeant automobile and provided underinsured motorist coverage in the amount of $100,000. Nationwide Mutual Insurance Company (hereinafter "Nationwide") provided liability coverage of $50,000 on Blackwelder's automobile.

In 1988, Maureen Sargeant filed suit against the Blackwelder estate seeking damages for her personal injuries arising from this accident. On 28 March 1989, Nationwide sent a letter to Mrs.

**STATE FARM MUTUAL AUTO. INS. CO. v. BLACKWELDER**

[332 N.C. 135 (1992)]

Sargeant's attorney stating that it would tender its $50,000 liability limits to Mrs. Sargeant at an appropriate time and asked that he forward the letter to State Farm so it could decide whether to advance Nationwide's $50,000 to Mrs. Sargeant and preserve its subrogation rights.

On 24 April 1989, State Farm advanced $50,000 to Mrs. Sargeant to protect its subrogation interest. On 6 November 1989, State Farm paid its $50,000 underinsured motorist limits to Mrs. Sargeant and indicated to Nationwide and Blackwelder's estate that it would not release its subrogation right against the estate. Mrs. Sargeant executed a release discharging State Farm from all claims arising from the 21 March 1988 accident for the stated consideration of $100,000. She agreed to hold in trust for the benefit of State Farm "any and all rights of recovery which (she) now (has) . . . against any person . . . who may be legally liable . . . for any and all damages . . . which (she) sustained" in the accident. She further agreed to hold in trust for or assign to State Farm "the proceeds of any settlement with or the amount of any judgment which she may obtain against any person or entity who may be legally liable to (her) for any and all damages . . . (she) may have sustained" in the accident of 21 March 1988. The release further acknowledged the subrogation rights of State Farm.

On 26 January 1990, Nationwide paid its $50,000 liability limits to Mrs. Sargeant, who released all claims that she had against it and also dismissed her action against the Blackwelder estate with prejudice. Nationwide's draft was to Mrs. Sargeant, her attorney and State Farm. It was endorsed by Mrs. Sargeant and her attorney and deposited into State Farm's account. On 19 March 1990, State Farm filed this action to recover payment from Blackwelder's estate. The trial court granted defendant's motion for summary judgment and dismissed this action with prejudice. The Court of Appeals reversed, holding that State Farm preserved its subrogation rights against the defendant by following the statutory procedure in N.C.G.S. § 20-279.21(b)(4).

The defendant's petition for discretionary review was allowed by this Court.

*Hartsell, Hartsell & Mills, P.A., by W. Erwin Spainhour, for defendant appellant.*

*Hutchins, Tyndall, Doughton & Moore, by Kent L. Hamrick, for plaintiff appellee.*

WEBB, Justice.

[1]    The defendant contends that the dismissal with prejudice of Mrs. Sargeant's Watauga County case against the defendant extinguished as a matter of law all claims against the defendant arising from the 21 March 1988 accident, whether such claims were asserted on behalf of Mrs. Sargeant or her subrogee, State Farm. The defendant argues that Mrs. Sargeant and State Farm were entitled to bring only one civil action against the defendant for Sargeant's injuries. By participating in the dismissal with prejudice of Sargeant's claim, State Farm had its subrogation rights extinguished. The defendant contends that State Farm has no right and no claim beyond that possessed by Mrs. Sargeant. We disagree.

N.C.G.S. § 20-279.21(b)(4) provides in pertinent part:

An underinsured motorist insurer may at its option, upon a claim pursuant to underinsured motorist coverage, pay moneys without there having first been an exhaustion of the liability insurance policy covering the ownership, use, and maintenance of the underinsured highway vehicle. In the event of such payment, the underinsured motorist insurer shall be either: (a) entitled to receive by assignment from the claimant any right or (b) subrogated to the claimant's right regarding any claim the claimant has or had against the owner, operator, or maintainer of the underinsured highway vehicle, . . . . No insurer shall exercise any right of subrogation . . . where the insurer has been provided with written notice in advance of a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of such notice. Further, the insurer shall have the right, at its election, to pursue its claim by assignment or subrogation in the name of the claimant, and the insurer shall not be denominated as a party in its own name except upon its own election.

Here, State Farm preserved its subrogation rights against the defendant by pursuing this claim in the manner as set forth in N.C.G.S. § 20-279.21(b)(4). On 24 April 1989, State Farm advanced $50,000, the amount of Nationwide's liability limits, to Mrs. Sargeant to protect its subrogation interests. On 6 November 1989, it advanced an additional $50,000 to settle the underinsured motorist

claim. As of that time, Nationwide had paid nothing whatsoever under its primary liability policy issued to Mr. Blackwelder.

By complying with the express terms of the statute, State Farm had the absolute right to pursue "any claim" against the defendant that Mrs. Sargeant "has or had." It was not necessary for State Farm to prosecute the Watauga County action in Mrs. Sargeant's name, nor was it necessary that that action remain pending for State Farm to pursue a recovery. It is clear under N.C.G.S. § 20-279.21(b)(4) that once the advancement is made and the underinsured claim is settled prior to exhaustion of the primary policy limits, the underinsured motorist carrier is pursuing "its claim" and not that of the insured. The underinsured motorist carrier is not required to be designated as a party plaintiff "except upon its own election." State Farm has elected to pursue its claim in its own name as provided by the statute.

In conjunction with the settlement of the underinsured motorist claim, State Farm obtained a release from Mrs. Sargeant discharging State Farm from any claims Mrs. Sargeant had against State Farm. This release discharged State Farm only, not Nationwide. The release also acknowledged State Farm's subrogation rights and assigned to it (to the extent of its payment) all of Sargeant's claims against Blackwelder's estate. Sargeant further agreed that any claims of State Farm pertaining to the accident could be presented in her name or in State Farm's name. Thus, State Farm had the absolute statutory right to pursue a claim against the defendant in the amount of $50,000, the amount of its underinsured payment. As both defendant and Nationwide had knowledge of State Farm's subrogation rights, they could not defeat State Farm's rights by any subsequent release from Mrs. Sargeant.

Mrs. Sargeant's dismissal did not terminate State Farm's subrogated claim because the claim against the defendant had already passed to State Farm by operation of law. The right to recover from the defendant was and is still vested in State Farm and by statute, State Farm may pursue "its claim" in its own name "at its election." Mrs. Sargeant could not dismiss, release, or waive State Farm's right to recover as she does not possess such right.

The defendant relies on several cases which it says establish the proposition that subrogation is based on equitable principles and a subrogee stands in the shoes of the subrogor. See *Insurance Co. v. Faulkner*, 259 N.C. 317, 130 S.E.2d 645 (1963); *Montsinger*

*v. White*, 240 N.C. 441, 82 S.E.2d 362 (1954); *Mace v. Construction Corp.*, 48 N.C. App. 297, 269 S.E.2d 191 (1980). When Mrs. Sargeant released the defendant, he says this extinguished the claim of the plaintiff. The defendant also relies on *N.C. Baptist Hospitals, Inc. v. Mitchell*, 323 N.C. 528, 374 S.E.2d 844 (1988) and *Harris-Teeter Super Markets v. Watts*, 97 N.C. App. 101, 387 S.E.2d 203 (1990), for the proposition that a claim for negligence may not be assigned. These cases dealing with subrogation and the assignment of claims do not deal with N.C.G.S. § 20-279.21(b)(4) and have no application to this case.

[2] The defendant also contends that the claim against him is barred under N.C.G.S. § 28A-19-3(b) which provides in part:

All claims against a decedent's estate which arise at or after the death of the decedent, . . . are forever barred against the estate, . . . unless presented to the personal representative . . . as follows:

. . . .

(2) With respect to any claim other than a claim based on a contract with the personal representative or collector, within six months after the date on which the claim arises.

In this case the testate lived for twenty-four hours after the accident from which the claim arose. The claim arose before the death of Mr. Blackwelder and the claim is not barred by this section.

Having followed the statutory procedures in N.C.G.S. § 20-279.21(b)(4), State Farm is entitled to pursue its claim against the defendant.

Affirmed.